Filed 12/8/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE, <br>     Plaintiff and Respondent, <br>                 v. <br> JOSEPH SILVA, <br>     Defendant and Appellant. | A160827 <br><br> (Alameda County Super. Ct. <br> No. 172865D) |

In 2014, Joseph Silva was convicted in a jury trial with two codefendants of two counts of first degree murder arising out of a home-invasion robbery and sentenced to 50 years to life in prison. In October 2019, Silva filed a petition for resentencing as a non-killer under Penal Code section 1170.95,[1] through which he succeeded in having his two murder convictions vacated and was resentenced to a prison term of 16 years. The judge sentenced him not just based on two in-concert home-invasion robberies in lieu of the two murders, but on a total of six home-invasion robberies or attempted robberies based on the number of robbery victims alleged in the original information. He was never tried or convicted of any of these robberies, nor did the jury make findings against him as to any of them.

---

[1] Undesignated statutory references are to the Penal Code. Subdivisions cited without reference to a statute are the subdivisions of section 1170.95.

1

On appeal, Silva argues that it was constitutional error under the Fifth, Sixth, and Fourteenth Amendments to impose sentence upon him for offenses of which he was never found guilty by a jury, and that as a result, we must reverse and remand with directions that he be resentenced to a shorter term for only two second degree robberies.  For his part, the Attorney General also requests a remand, but he contends Silva should have been sentenced to a longer term than the one the court imposed.  We agree with Silva that due process requires notice and an opportunity to be heard on any request by the prosecution to designate an unadjudicated offense for resentencing under subdivision (e) of section 1170.95, but on the record presented here we believe that bedrock standard was met.  Save for this procedural due process aspect of the position Silva takes here on appeal, we reject his various claims of constitutional error and conclude that the remand requested by each party is unnecessary.  Instead, we shall strike one of the robberies (count 8) and otherwise affirm.

## I. BACKGROUND

A. *The Underlying Crimes*

This court is well acquainted with the crimes underlying this appeal, having filed four previous opinions in the direct appeal in its various incarnations in docket number A144079.[2]  At Silva's request, we have taken judicial notice of the entire appellate record in A144079.  Three of our four prior opinions are contained in the clerk's transcript of Silva's current appeal. (See fn. 2, *ante*.)

---

[2] *People v. Tabron* (Nov. 28, 2017, A144079) (nonpub. opn.) is not contained in the resentencing record; the other three opinions are:  *People v. Tabron* (Dec. 7, 2018, A144079) (nonpub. opn.); *People v. Tabron* (Aug. 26, 2019, A144079) (nonpub. opn.); *People v. Tabron* (Feb. 11, 2020, A144079) (nonpub. opn.).

The two murders occurred during a 3:00 a.m. home-invasion robbery at the Gonzalez house in Oakland in March 2013, undertaken to settle a drug debt owed by Esteban Gonzalez, Jr. (Junior) to Joseph Tabron, one of Silva's codefendants. Junior lived with his parents and others[3] in the Gonzalez house. Tabron, a drug dealer who lived around the corner, masterminded the robbery. Tabron's uncle, Joseph Castro, a longtime methamphetamine addict who lived with Tabron, participated in the robbery and was the third codefendant at trial. Another robber, called "Taco" during the home invasion, was involved but was never identified.

Guns drawn, Tabron and Taco corralled everyone in the house into a back bedroom, took their cell phones and money, and looted the place of computers, televisions, collectibles, and other valuables. Tabron then ordered the victims to lie face-down on the floor just before the robbers left, telling them not to call the police or he would come back and kill them all.

The two murder victims, Trisha Forde and Noe Garcia, did not live in the Gonzalez house. Forde entered the back bedroom while the robbery was in progress, apparently to buy drugs, and was planning to meet up with Garcia afterwards. After taking her money, Tabron and Taco forced Forde at gunpoint to go outside with them, where gunshots soon erupted. Garcia, who was apparently coming to meet Forde, may have been involved in the gunplay, but Forde and Garcia were shot and killed with two different guns within a minute or two after she was forced from the house. Both were shot mostly from behind, including in the back of the head at close range. After the gunfire, witnesses heard the screeching of tires.

---

[3] The residents of the Gonzalez house were Junior, his parents, Esteban and Dana Gonzalez, Esteban's brother, Raul Gonzalez, Jose Mendoza, and Martin Ascencio. Esteban and Junior were drug dealers.

**B. *Silva's Role***

Silva's involvement came after the robbery was underway.  He testified at trial that he had bought an "eight ball," or an eighth ounce of methamphetamine, from Tabron earlier in the evening and sold half to a friend.  Silva went to Tabron's house to pay him for the drugs after 3:00 a.m. but found no one at home.  Tabron's brother, Jeffrey Tabron (Jeffrey),[4] just then drove up in his car and asked Silva to help load a flat-screen TV, some laptops, and other items from Jeffrey's car into Silva's truck.  Silva obliged, and Jeffrey then asked Silva to come around the corner to load another TV into his truck.

Once at the Gonzalez house, as Silva helped load a second TV into his truck, "red flags went up" and he knew "somethin' was goin' down," but he continued helping load more items into his truck.  Silva, testifying at trial, denied entering the Gonzalez house that night.  In a police interview in September 2013, however, he said he went inside and saw several people lying face-down on the floor in a back bedroom, with a masked man standing over them holding a gun.  When Silva went into the house a second time, he saw a man pushing a woman out of the door but could not see his face because he was wearing a hood.  Silva told the police he saw Tabron and Jeffrey with guns that night and saw Tabron fire his weapon.  Silva acknowledged in his police interview that he knew a "home invasion" was underway.

Silva testified he left the Gonzalez house with the two TV's shortly after loading the second one into his truck, around 4:05 a.m., but the

---

[4] Jeffrey was also charged with the murders and other crimes in the original information and with the murders in the amended information.  The trial court granted Jeffrey's motion to sever his case from his codefendants'.

4

Shotspotter gunshot detection system registered the shots at 3:54 a.m. Silva testified he never saw Garcia's or Forde's bodies, but he told the police he saw a body on the ground.

## C. *The Charges and the Trial*

In the original information, the codefendants were charged in count 1 with Garcia's murder (§ 187) and in count 2 with Forde's murder (§ 187). Those charges were combined with six robbery charges (§§ 211, 213, subd. (a)(1)(A)), one for each robbery victim in the Gonzalez house at the time of the home invasion,[5] and four counts of kidnapping to commit another crime (§ 209, subd. (b)(1)), the alleged victims being Raul Gonzalez, Junior, Forde and Mendoza.[6] By the time of trial, however, the district attorney had amended the information to allege only the two murders against all three codefendants and a felon-in-possession-of-a-firearm charge against Tabron (§ 29800, subd. (a)(1)), together with arming enhancements against all defendants (§ 12022, subd. (a)), two prison priors against Tabron, ten prison priors against Castro, and one prison prior against Silva (§ 667.5, subd. (b)). The amended information charged Tabron with the special circumstance of robbery for both murders (§ 190.2, subd. (a)(17)(A)), and kidnapping (§ 190.2, subd. (a)(17)(B)) and multiple murders (§ 190.2, subd. (a)(3)) for Forde's

---

[5] The robbery victims were named as Trisha Forde (count 3), Jose Mendoza (count 4), Raul Gonzalez (count 5), Dana Gonzalez (count 6), Junior (attempted robbery) (count 7), and Jose Hernandez (count 8). The Attorney General contends there were nearly a dozen people present in the Gonzalez house when the crimes took place, which is why he urges us to remand for resentencing in part so the superior court might redesignate more felonies in lieu of the two murder counts and might impose a longer sentence on remand.

[6] The kidnapping counts were dismissed at the prosecution's request before the amended information was filed.

murder. No robberies were charged, but the jury was instructed on robbery, burglary and kidnapping, and on felony murder and aiding and abetting.

The jury found all three codefendants guilty of both murders and Tabron guilty on count three, the felon-in-possession-of-a-firearm charge. There were no jury findings specifying any felony it found true on the basis of the felony-murder instruction. It found the robbery and kidnapping special circumstance allegations true for Tabron but did not reach a finding on the multiple murders special circumstance. It found true that Tabron was armed with a firearm during the commission of the offenses but did not find that Castro or Silva was armed.

After a bifurcated trial on the prior conviction allegations, Judge Allan Hymer sentenced Tabron to two consecutive terms of life in prison without possibility of parole, plus four years. He sentenced both Castro and Silva to 50 years to life in prison after dismissing their prior convictions in the interests of justice. (§ 1385.)

**D.** *The Proceedings Under Section 1170.95*

After his convictions were affirmed but his plea for relief on direct appeal under Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) was rejected (*People v. Tabron, supra*, A144079 [Aug. 26, 2019]; see *People v. Gentile* (2020) 10 Cal.5th 830, 839 (*Gentile*)), Silva filed a petition for resentencing in Alameda County Superior Court under section 1170.95. Judge Morris Jacobson, who had presided over the preliminary examination in the underlying case, ordered the prosecution to respond to the petition and appointed counsel for Silva. (See *People v. Lewis* (2021) 11 Cal.5th 952, 960–970 (*Lewis*).)

In its response, the prosecution conceded that Silva had made a prima facie showing of eligibility for relief in that he could not be convicted of the two murders under current law due to statutory revisions enacted by Senate

6

Bill 1437. (§§ 188, 189, subd. (e)(2) & (3), 1170.95, subd. (d)(2).) The prosecution specifically conceded there was "no evidence he either harbored an intent to kill or was a major participant in the underlying crime and acted with reckless indifference to human life." Given the People's concessions, Judge Jacobson conducted no evidentiary hearing under subdivision (d)(3), but he took briefing, received letters from interested third parties, and heard argument on the legal and factual aspects of resentencing under subdivision (e).

On July 30, 2020, the People filed a resentencing memorandum that summarized aggravating and mitigating factors for sentencing under California Rules of Court, rules 4.421 and 4.423 based on Silva's history and his role in the crimes underlying his murder convictions. The memorandum did not make a specific resentencing recommendation.

At the judge's request, on August 4, 2020, the prosecution filed an updated resentencing memorandum that attached the presentence probation report prepared in 2015 describing the crimes and excerpts from statements made by Silva in his police interviews. The updated resentencing memorandum also said the prosecution intended to ask for a 24-year sentence, calculated as follows: "For the home invasion robbery of Trisha Forde, impose the aggravated term of 9 years. (Penal Code §§ 211, 213(a)(1).) [¶] For each of the four other home invasion robbery victims, impose one-third the midterm of home invasion robbery, for a total of 8 years. (Penal Code §§ 211, 213(a)(1); [o]ne-third the middle term of the triad for home-invasion robbery, 3-6-9.) [¶] For the one victim of attempted home-invasion robbery, impose one-half of one-third of the midterm for a total of 1 year. [¶] For each of the six crimes, impose a 1-year arming clause enhancement pursuant to Penal Code section 12022(a)(1) for a total of 6 years."

7

Thus, the district attorney proposed that the court revive the arming enhancements rejected by the jury, arguing that the jury misunderstood the instruction and incorrectly found the enhancements not true for Silva and Castro. (See § 12022, subd. (a) [defendant guilty of enhancement if principal armed with a firearm].) The Attorney General does not renew this argument on appeal. The updated resentencing memorandum was the first written notice to Silva that he was potentially subject to resentencing for the multiple robberies alleged in the original information.

The next day, Silva's attorney filed "defendant's 1170.95 subdivision (e) memorandum," in which he proposed the "legally correct sentence is redesignation of Mr. Silva's two murder convictions as two residential robberies sentenced consecutively." Although defense counsel referred to the redesignated offenses as "residential robberies," he appears to have actually had in mind home-invasion robberies in concert based on the sentencing triad he quoted (3-6-9 years) and the statute he cited (§ 213, subd. (a)(1)(A)). Under his calculation, if the upper term of nine years were imposed for the Forde robbery in lieu of the Forde murder and two years consecutive (one-third the middle term) for a second in-concert home-invasion robbery in lieu of the Garcia murder, that would produce an 11-year sentence, which is what he advocated. This amounted to an implicit concession that the murders could be redesignated as home-invasion robberies in concert. Defense counsel, at the redesignation and resentencing hearing, withdrew that concession and urged the court to redesignate the murders as second degree robberies (2-3-5 triad), which would have produced a maximum sentence of six years (§ 213, subd. (a)(2)).

E. *Redesignation and Resentencing Under Subdivision (e)*

On August 13, 2020, the court held a redesignation and resentencing hearing, entertained argument from both sides, and granted Silva's petition

under section 1170.95.  Judge Jacobson vacated the two murder convictions, recalled those sentences, and imposed no sentences on those counts.  The court agreed with the defense that it could not impose the arming enhancements the jury had found not true, while rejecting the defense position that it was limited to resentencing on two robbery counts corresponding to two redesignated murder convictions.  Although Judge Jacobson thought the evidence also supported a kidnapping conviction, he did not "wish to go outside the information" and declared the underlying felony in the murders to be a home-invasion robbery in concert.  He also ruled he could impose terms for all robbery counts included in the original information, even though those counts were dropped from the amended information and were not determined at trial.

Judge Jacobson declared the underlying felonies for the two murders to be five home-invasion robberies in concert (counts 3 through 6 and 8) and one attempted home-invasion robbery in concert (count 7).  The original information charged each robbery as a "home-invasion robbery in concert"; none was charged as generic second degree robbery or even as simple residential robbery.  He took this course because subdivision (e) implicitly provides for factfinding by the judge presiding over the section 1170.95 proceedings in redesignating the conviction as one for the underlying felony or felonies and imposing the appropriate sentence.  (See *People v. Howard* (2020) 50 Cal.App.5th 727, 736–738 (*Howard*); cf. *People v. Fortman* (2021) 64 Cal.App.5th 217, 223–226 [subd. (d)(3)], review granted July 21, 2021, S269228 (*Fortman*).)

Judge Jacobson imposed a total prison term of 16 years, computed as follows:  a nine-year principal upper term on count 3 for in-concert home-invasion robbery of Forde; consecutive two-year subordinate terms (§ 1170.1,

9

subd. (a)) on counts 4, 5 and 6 for first degree home-invasion robbery in concert of Jose Mendoza, Raul Gonzalez and Dana Gonzalez; a consecutive one-year term on count 7 for in-concert home-invasion attempted robbery of Junior; and a concurrent six-year term on count 8 for first degree home-invasion in-concert robbery of Jose Hernandez.

The judge called Silva a "full and voluntary participant in the home invasion robbery." He found three aggravating circumstances with respect to the crime and no mitigating circumstances. He found the only mitigating circumstance relating to Silva personally that "arguably applies" was his early admission of wrongdoing, while all the aggravating factors applied.

Silva timely appealed, contending his new sentence was unauthorized under section 1170.95, subdivision (e) and violated his fundamental constitutional guarantees because the judge imposed sentences on six alleged robbery and attempt offenses that had never been tried to the jury and of which he had not been convicted. He claims the sentence imposed was erroneous as a matter of law, and not just an abuse of discretion. At least in this circumstance, the judgment is appealable. (See Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2021) § 23.51(M), pp. 23-198 to 23-199 (rev. 9/2021) (Couzens).)

## II. DISCUSSION

### A. *Senate Bill 1437 and Section 1170.95*

Under the felony-murder rule in effect at the time of Silva's crimes, any killing "committed in the perpetration of, or attempt to perpetrate" certain specified crimes, including robbery, even for a non-killer participant in the felony, was "murder of the first degree. All other kinds of murders [were] of the second degree." (Former § 189; see *Fortman, supra*, 64 Cal.App.5th at p. 222, fn. 4, review granted.) Senate Bill 1437, which enacted various Penal Code amendments that became effective January 1, 2019, significantly

10

altered liability for murder under the theories of felony murder and the natural and probable consequences doctrine.  (See *Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, *supra*, 10 Cal.5th at pp. 846–848.)  "In the introductory legislative 'findings' of Senate Bill 1437, our Legislature declared that its purpose was to more closely align the punishment for murder with one's 'own level of individual culpability.'  (Stats. 2018, ch. 1015, § 1(d); see *Gentile*, at pp. 845–846 [so noting].)"  (*Fortman*, at p. 225; see *Howard*, *supra*, 50 Cal.App.5th at pp. 735, 742.)

By adding section 1170.95, Senate Bill 1437 also set forth a procedure by which non-killers convicted under the old law could have their convictions vacated and could be resentenced under the new law.  (*Lewis*, *supra*, 11 Cal.5th at p. 957.)  As a non-killer, Silva can now avail himself of section 189, subdivision (e), which makes a non-killer liable for murder only if he or she, with the intent to kill, assisted the actual killer in a first degree murder, or was a "major participant" in the underlying felony who acted "with reckless indifference to human life."  (§ 189, subd. (e)(2) & (3).)  The prosecution conceded Silva was not a major participant in the underlying felonies and had no intent to kill.

Typically, once a petitioner makes a prima facie showing of eligibility for relief, the judge issues an order to show cause, and an evidentiary hearing is held in which the prosecution has the burden of proof beyond a reasonable doubt that the petitioner is ineligible for relief under the statute.  (§ 1170.95, subd. (d)(3).)  At the eligibility hearing, both the prosecution and the defense may rely on the record of conviction or may introduce new evidence or both.  (*Ibid.*; *Fortman*, *supra*, 64 Cal.App.5th at p. 223, review granted.)  A leading commentator has suggested the evidence at a subdivision (d)(3) hearing "can include the abstract of judgment, the section 969b prison packet, the charging

document and plea form, transcripts of the petitioner's plea, the factual basis given for the plea, preliminary hearing and trial transcripts, and appellate opinions." (Couzens, *supra*, § 23.51 (J)(2), pp. 23-184 to 23-185; see *People v. Myles* (2021) 69 Cal.App.5th 688, 697–703 [parole comprehensive risk assessment report and transcript of parole suitability hearing admissible as " 'new evidence' " under subdivision (d)(3)].)

The parties may waive the eligibility hearing and proceed directly to resentencing if the prosecution concedes the petitioner's eligibility for relief (§ 1170.95, subd. (d)(2)), as it did here. Once the petitioner is determined to be entitled to relief, "the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1170.95, subd. (d)(3).) But the statutory scheme specifically contemplates circumstances in which a petitioner may be resentenced for a "target offense" or an "underlying felony" that was not originally charged. Under section 1170.95, subdivision (e)—the provision at issue in this case—"[i]f . . . murder was charged generically, and the target offense was not charged, the petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes. Any applicable statute of limitations shall not be a bar to the court's redesignation of the offense for this purpose." (§ 1170.95, subd. (e).) Compared with subdivision (d)(3), subdivision (e) contains little detail as to how the redesignation and resentencing process is to be conducted. To address Silva's arguments on appeal, we will explore that subject in some depth.

## B. *The Parties' Positions*

Silva contends under the foregoing provisions he could only be sentenced for two redesignated second degree robberies in lieu of his two first degree murder convictions. He contends his rights to notice and an

opportunity to defend under the Fifth and Fourteenth Amendments, and jury trial, confrontation, and counsel under the Sixth Amendment, were violated by the redesignation procedure. Redesignating two murders as six robbery offenses of which he was never convicted, he argues, is inconsistent with the legislative intent and violates his fundamental constitutional rights.

The Attorney General takes the position that (1) the murder of Forde was properly redesignated a first degree home-invasion robbery in concert; (2) the murder of Garcia should have been redesignated a first degree home-invasion robbery in concert; (3) the court acted within its discretion under section 1170.95 in imposing a sentence including punishment for first degree in-concert home-invasion robbery and attempted robbery on counts 4 through 7 of the original information; and (4) Silva is correct that there was insufficient evidence to support a redesignation on count 8 and thus should not have been sentenced on that count.

As a result, both parties agree the matter should be remanded for resentencing. Notwithstanding their agreement, we conclude a remand would be an idle act; we shall strike count 8 and affirm the remaining counts.

## C. *Sentencing Silva Based on In-concert Home-invasion Robberies*

Before we decide whether Silva could be resentenced for six robbery and attempt offenses or only two, we must consider whether the judge erred in redesignating Forde's murder as a first degree home-invasion robbery in concert. The parties agree the underlying felony was robbery, but disagree whether it could be redesignated as an aggravated form of robbery. It makes a difference in sentencing because the robbery statutes, then and now, define as first degree robbery, among other things, "every robbery which is perpetrated in an inhabited dwelling house." (§ 212.5, subd. (a).) Most other forms of robbery are of the second degree. (§ 212.5, subd. (c).) But there is yet another aspect of this case that affects resentencing under section

13

1170.95. Second degree robbery is punishable by two, three, or five years in state prison (§ 213, subd. (a)(2)); residential robbery is ordinarily punishable by three, four, or six years (§ 213, subd. (a)(1)(B)), but in the specific circumstance where the "defendant, voluntarily acting in concert with two or more other persons, commits the robbery within an inhabited dwelling house," it is punishable by imprisonment for three, six, or nine years (§ 213, subd. (a)(1)(A)).

In the redesignation and resentencing hearing, defense counsel initially argued Silva should be sentenced to two consecutive home-invasion robberies in concert, for a total of 11 years in prison (3-6-9 triad), but he later withdrew his concession on this point and argued only generic, second degree robberies should be redesignated. Under his theory that an in-concert home-invasion robbery redesignation was not allowed under the statute—which remains Silva's theory on appeal—Silva would be subject to a maximum sentence of six years in prison (2-3-5 triad) for two second degree robberies sentenced consecutively. (§§ 213, subd. (a)(2), 1170.1, subd. (a).)

Silva's contention has no merit. More than a year ago, in *Howard*, *supra*, 50 Cal.App.5th 727, Division Five of this court rejected the same argument by a petitioner under section 1170.95 whose murder conviction was based on a nighttime residential burglary with a codefendant who shot and killed an elderly woman during the robbery. At trial, the court "instructed the jury on aiding and abetting, felony murder, and general burglary . . . . The jury convicted Howard of first degree murder . . . with a felony-murder special circumstance, finding Howard was engaged in the commission of the crime of burglary . . . ." (*Howard*, *supra*, at p. 732, citations omitted.) In an initial appeal, Howard obtained vacatur of the special circumstance finding,

14

but his murder conviction was otherwise affirmed.  (*Id*. at p. 733.)[7]  Then, on remand, following the passage of Senate Bill 1437, Howard filed a resentencing petition seeking vacatur of his murder conviction.  (*Howard*, at p. 733.)  Under section 1170.95, subdivision (d)(2), the prosecution conceded eligibility for resentencing, and as in this case, the court proceeded directly to resentencing under section 1170.95, subdivision (e).  (*Howard*, at p. 733.)

Howard made no attempt to argue he could not be resentenced for committing a burglary, the sole offense for which he was ultimately resentenced.  The only dispute was over the degree of burglary that could be used as the "underlying felony" under section 1170.95, subdivision (e).  Howard argued for a sentencing triad based on general burglary, but the court chose to resentence him for first degree burglary, with its higher sentencing triad, since the undisputed facts at trial showed that the offense took place in a residence.  (*Howard*, *supra*, 50 Cal.App.5th at p. 738.)  The court also designated Howard's burglary conviction a violent felony (§ 667.5, subd. (c)(21)) and reimposed an arming enhancement (§ 12022, subd. (a)(1)) that had earlier been vacated along with the murder conviction as part of the relief Howard was entitled to under section 1170.95.  (*Howard*, at pp. 740–741.)  On appeal, *Howard* found all these sentencing decisions were within the resentencing court's discretion.  (*Id*. at p. 742.)

Howard, like Silva, claimed a generic murder conviction based on felony murder, with no underlying felony charged, could only be redesignated

---

[7] The basis of the reversal was that "the evidence did not establish Howard acted with reckless indifference to human life" (*Howard*, *supra*, 50 Cal.App.5th at p. 733), not that there was any deficiency in the evidence that the murder took place in the course of a burglary.

15

as a second degree felony, not an aggravated form of the felony.[8] (*Howard*, *supra*, 50 Cal.App.5th at p. 738.) The Court of Appeal rejected that argument on both statutory construction and constitutional grounds, holding a resentencing court could redesignate a vacated murder conviction as a lesser offense commensurate with his participation in the underlying felony, not just generically, but with the petitioner's individual culpability in mind based on the evidence at trial. (*Howard*, *supra*, 50 Cal.App.5th at pp. 738–740, 742; see *People v. Gonzales* (2021) 65 Cal.App.5th 1167, 1174–1175 (*Gonzales*).) What *Howard* did not say explicitly, but what it authorized in practice, was factfinding by the resentencing judge, something we believe is implicit in the redesignation process. (Cf. *Fortman*, *supra*, 64 Cal.App.5th at pp. 224–225 [judge is "*independent trier of fact*" in hearing under subd. (d)(3)], review granted.)

## D. *Sixth Amendment Right to Jury Trial and Other Trial Rights*

The question whether such factfinding by the judge offends the federal Constitution was also answered by *Howard, supra*, 50 Cal.App.5th at page 740. Silva contends his Sixth Amendment right to jury trial was violated by the proceedings below because he was sentenced on charges never proved to a jury. The Sixth Amendment applies "[i]n all criminal prosecutions." (U.S. Const., 6th Amend.) A petition under section 1170.95 is not a criminal prosecution, and the Legislature has very clearly placed in the judge's hands

---

[8] Silva also claims his sentence violated section 1157, which specifies that when the degree of the crime is not indicated by the fact finder, it "shall be deemed to be of the lesser degree." Silva claims the robberies therefore must be sentenced as second degree. *Howard* rejected that argument, too. (*Howard*, *supra*, 50 Cal.App.5th at pp. 739–740.) We agree the argument is meritless.

the decision about redesignation. *Howard* held there is no Sixth Amendment bar to its doing so.

"The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature 'that does not implicate defendants' Sixth Amendment rights.' [Citations.] [¶] Here, the process by which a trial court redesignates the underlying felony pursuant to section 1170.95, subdivision (e) does not implicate Howard's constitutional jury trial right under *Apprendi v. New Jersey* (2000) 530 U.S. 466 or *Alleyne v. United States* (2013) 570 U.S. 99. The redesignation does not increase Howard's sentence. We reject Howard's argument that the residential burglary designation violated his constitutional due process rights." (*Howard, supra,* 50 Cal.App.5th at p. 740.)

Though Silva tries to convince us that *Howard* was wrongly decided, this Division recently joined several other intermediate appellate courts that have agreed with *Howard*'s Sixth Amendment analysis. (*People v. James* (2021) 63 Cal.App.5th 604, 610–611.) Hence, we reject Silva's argument that his new sentence violates the Sixth Amendment. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064 [retroactive application of Proposition 36, the Three Strikes Reform Act of 2012, is a legislative act of lenity that does not implicate Sixth Amendment rights].)

## E. *Due Process*

### 1. A petitioner under section 1170.95, subdivision (e) is entitled to notice and an opportunity to be heard

While the Sixth Amendment has no application to a section 1170.95 resentencing proceeding, those who seek section 1170.95 relief do not sacrifice their rights to due process under the Fifth and Fourteenth Amendments. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7, 15.) Silva raises the due process issue, but briefly, and relying on cases involving

original criminal prosecutions. He cites a selection of cases dealing with the pleading and sentencing rights to which a defendant is entitled in a criminal prosecution. (*People v. Anderson* (2020) 9 Cal.5th 946, 953 [underlying the statutory pleading requirements are constitutional rights to notice and an opportunity to be heard at trial]; *People v. Mancebo* (2002) 27 Cal.4th 735, 740–750 [court violated due process by imposing sentence on multiple victim circumstance under the one-strike law (§ 667.61, subd. (e)(5)) that had not been pleaded and proved]; *People v. Jackson* (1985) 37 Cal.3d 826, 835, fn. 12 [conviction or sentence may not be imposed upon an uncharged enhancement]; *People v. Davis* (2002) 102 Cal.App.4th 377, 385 [section 290 registrant could not be convicted of failing to notify one sheriff's department of his move out of the county when the information had charged failure to notify a different county's sheriff's department of a different move]; cf. *Presnell v. Georgia* (1978) 439 U.S. 14, 16 ["fundamental principles of procedural fairness apply with no less force at the penalty phase of a trial in a capital case"].)

Though these cited cases establish broad notice and sentencing rights in criminal prosecutions, we do not find them controlling in proceedings under section 1170.95. Silva cannot legitimately claim the robbery offenses the court chose to include in its resentencing package were "uncharged"; they were charged in the original information. Thus, it is an overstatement to say he had no notice whatsoever, at any point, that he might once again be put in jeopardy of conviction for them. The factual basis for Silva's lack of notice complaint appears to be that the *amended* information not only gave him no notice he might eventually be sentenced for five robberies and an attempted robbery, but it led him to believe he would not be resentenced for anything other than a lesser offense to murder or a charge supported by sentencing

18

enhancement findings returned against him at trial. While we reject any claim that the amended information constrained the court to selecting redesignated offenses that were charged and actually litigated at trial—section 1170.95, subdivision (e) on its face refutes that notion (see pt. II.F., *post*)—we think a section 1170.95 petitioner is entitled to explicit notice of any offense the court or prosecutor proposes to redesignate as an underlying felony or target offense under subdivision (e) in lieu of a murder conviction. Though subdivision (e) is silent on the procedure to be employed when the parties waive an evidentiary hearing under section 1170.95, subdivision (d)(2), we believe such notice reasonably in advance of the subdivision (e) determination is required as a matter of fundamental fairness. The Attorney General disagrees that due process is implicated here, but his only authority is *Howard*, *supra*, 50 Cal.App.5th at page 740, where there was no question the petitioner knew he might be resentenced to some form of the single burglary at issue, since that offense provided the basis of the special circumstance finding against him at trial (*Id*. at p. 732). In this case, by contrast, Silva was never called upon in the original prosecution to meet and prepare a defense to the individual robbery offenses for which he was resentenced.

We have found no California case describing any due process protections to which a petitioner may be entitled in the redesignation and resentencing process under subdivision (e) of section 1170.95, though it is an issue of widespread importance upon which trial courts sorely need guidance. We begin our analysis by acknowledging that a resentencing proceeding under subdivision (e) does not require all the same due process protections of a criminal trial. At sentencing, " ' " '[d]ue process does not require a judge to draw sentencing information through the narrow net of courtroom evidence

19

rules . . .[. S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source . . . whence it comes.' " ' " (*People v. Prosser* (2007) 157 Cal.App.4th 682, 692.) Still, we are convinced that whenever a court engages in criminal sentencing, the liberty of the party subject to such sentencing hangs in the balance, and he or she has a right to due process. (See *Betterman v. Montana* (2016) 578 U.S. ___ [136 S.Ct. 1609, 1618] ["After conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair."]; *People v. Peterson* (1973) 9 Cal.3d 717, 726 [hearing violates due process if it is fundamentally unfair]; *People v. Eckley* (2004) 123 Cal.App.4th 1072, 1080 [material factual inaccuracies in sentencing documents rendered sentencing fundamentally unfair].)

Even in the context of a court's determination of restitution, a convicted defendant retains certain fundamental due process rights. "The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: ' "A defendant's due process rights are protected when the probation report gives *notice* of the amount of restitution claimed . . . , and the defendant has an *opportunity to challenge* the figures in the probation report at the sentencing hearing." ' " (*People v. Cain* (2000) 82 Cal.App.4th 81, 86, italics added.) Thus, where a defendant was assessed some $8,000 in travel expenses for his victims as restitution, without notice that those expenses would be determined at the hearing, the proceeding was fundamentally unfair in that respect and violated due process. (*People v. Marrero* (2021) 60 Cal.App.5th 896, 913–914.)

By the same token, we conclude a redesignation and resentencing procedure that abandons the most basic tenets of notice and an opportunity

to be heard would be fundamentally unfair and would violate due process, and we refuse to so construe section 1170.95. Under section 1170.95, the resentencing judge retains much discretion to impose a range of possible sentencing choices, and his or her discretionary choices have a direct impact on the petitioner's liberty interests, depending on the choice of redesignated crime(s) and the structure of the sentence imposed. In this case, for instance, the parties have proposed resentencing Silva to somewhere between six and 24 years in prison, and though any sentence in that range would be a reduction from his former sentence, the vast range available implicates the petitioner's liberty interest. We conclude, as in any sentencing proceeding, the protections for "life, liberty, or property" embodied in the due process clauses of the Fifth and Fourteenth Amendments demand fundamental fairness in a section 1170.95 resentencing.

Moreover, the subdivision (e) proceeding is not simply a resentencing, but also a redesignation of one or more criminal offenses which mimics a criminal conviction. This form of process, so far as we know unknown in criminal procedure before section 1170.95 created it, calls into play the same bedrock entitlement to notice and opportunity to be heard that we would recognize in advance of an actual conviction. In light of the liberty interest at stake, a petitioner facing resentencing under section 1170.95, subdivision (e), should not be left in the dark as to what uncharged "target offense" or "underlying felony" the court may be contemplating. To make an informed decision under section 1170.95, subdivision (d)(2) about waiving an evidentiary hearing and proceeding directly to resentencing, section 1170.95 petitioners are entitled to notice of the offenses for which they may be resentenced so that they may consider whether they wish to put on evidence relevant to the court's factfinding.

Notice and an opportunity to be heard are the fundamental hallmarks of due process whenever "life, liberty, or property" is put in jeopardy. (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, §§ 7 & 15.) "Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313 (*Mullane*).) What we hold here, specifically, is that as a matter of procedural due process Silva was entitled to know, reasonably in advance of the court resentencing him, which crimes the prosecution sought to have redesignated as underlying felonies, the length of sentence the prosecution proposed, and how that recommended sentence was calculated. Unless we assume the Legislature intended to enact a scheme forcing the petitioner to guess what redesignated offense he faces, his right to avail himself of the opportunity to offer "new or additional evidence" at a subdivision (d)(3) hearing—should he chose to do so—is meaningless absent some form of notice. Notice is required so he may prepare to meet the arguments and evidence presented by the prosecution and to argue that a different crime was the underlying felony or target offense. If the prosecution makes no resentencing recommendation, the court must notify the petitioner in advance of its proposal for redesignation and resentencing and must give him or her an opportunity to respond.

*Gonzales*, *supra*, 65 Cal.App.5th 1167, from the Second District, Division Four, does not hold to the contrary. That case dealt with an uncharged prior offense in a context raising an ex post facto issue. (*Gonzales*, at p. 1170.) At age 16 in 1998, petitioner Gonzales had engaged in a fistfight with a rival gang member, which led to a shooting death and a first degree

22

murder conviction on a natural and probable consequences theory. (*Id.* at p. 1171.) He was sentenced to a term of 25 years to life in prison, plus 25 years to life for an arming enhancement. His conviction was later reduced to second degree murder (15 years to life) under *People v. Chiu* (2014) 59 Cal.4th 155. (*Gonzales*, at p. 1171.) His conviction was vacated under section 1170.95 and redesignated under subdivision (e) as the uncharged target offense: battery (§ 242). (*Gonzales*, at p. 1170.) Although battery ordinarily is a misdemeanor offense carrying a maximum sentence of six months in county jail, the court sentenced Gonzales under section 186.22, subdivision (d), which had not yet been enacted at the time Gonzales committed his crime. (*Gonzales*, at p. 1170.)

In affirming the judgment, *Gonzales* noted that Senate Bill 1437 "specifically provides that if relief is granted and the petitioner's murder conviction is vacated, he or she will be resentenced on the remaining charges and/or, in some circumstances, on the previously *uncharged* target offense or underlying felony, so long as the new sentence is based upon the record of conviction and is not greater than the initial sentence. (§ 1170.95, subds. (d)(1), (d)(3), (e).)" (*Gonzales*, *supra*, 65 Cal.App.5th at p. 1174.) "Thus," the court held, "Senate Bill 1437, in granting leniency to certain individuals who have been convicted of murder, *gives notice that the individual may be resentenced on criminal offenses that were not charged but are supported by the record*, with the limitation that the new sentence cannot exceed the original sentence." (*Ibid.*, italics added.) Although the court casts its holding in both ex post facto and due process terms, the notice issue addressed in that case arose in the context of a due process challenge made under the ex post facto clause. (*Gonzales*, at p. 1173, citing *Weaver v.*

23

*Graham* (1981) 450 U.S. 24, 30, and *People v. Sandoval* (2007) 41 Cal.4th 825, 857.) There is no ex post facto issue in this case.

### 2. Notice was given

We require specificity with respect to notice of the intended redesignated felonies, but we still find no due process violation in Silva's case. Through the updated resentencing memorandum, Silva received notice on August 4, 2020, of the People's resentencing proposal, including the recommendations for redesignation and the calculation of the requested 24-year sentence. The court's redesignation decision was made on August 13, 2020. Thus, Silva was notified nine days in advance that the prosecution would seek redesignation of all originally charged robbery and attempted robbery offenses. That was constitutionally sufficient notice in the circumstances.

While in some cases nine days' notice might be considered inadequate to prepare for a hearing, there is no basis to believe it was inadequate in Silva's case. All parties understood the judge would vacate the murder convictions and redesignate them as the underlying felonies. Silva's counsel was able to file a written response to the proposed redesignation and resentencing on the very next day. Silva never requested an evidentiary hearing on the robberies and never requested more time to prepare for the redesignation and resentencing hearing, even after learning of the prosecution's 24-year resentencing recommendation. He never indicated he intended to mount a defense to any of the robbery charges, either by putting on new evidence or by reference to evidence already in the record of conviction.

Silva's attorney, who had also been his trial attorney, objected to the resentencing based on the number of counts to which he was sentenced and preserved various legal objections, but we see no indication in the record that

Silva had a defense to any of the robbery charges but was thwarted in presenting it by a lack of notice. We conclude Silva received sufficient notice, and even assuming there was a notice violation that was preserved for appeal, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Except on count 8, the evidence against Silva as a participant in the underlying robberies was overwhelming, including by his own admissions. There is no reason to believe greater notice of the redesignated robberies would have led to a different outcome.

### 3. Silva made no request for an evidentiary hearing on redesignation and resentencing and therefore was not deprived of an opportunity to be heard

" 'The fundamental requisite of due process of law is the opportunity to be heard.' [Citation.] This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." (*Mullane*, *supra*, 339 U.S. at p. 314.) Thus, "notice and an opportunity to be heard" has become the definitional watchword for due process, and those rights are protected under the Fifth and Fourteenth Amendments regardless of whether Sixth Amendment protections apply.

Silva did not receive an evidentiary hearing on the redesignation of his murder convictions, nor does the statutory language suggest such a hearing is always anticipated, since the statute expressly contemplates that it may be waived (§ 1170.95, subd. (d)(2)), as occurred in this case. Whether an evidentiary hearing must be afforded upon request is an issue we need not and do not reach. Silva made no such request. Indeed, whether an in-court hearing of any kind is required is not spelled out in the statute. Again, we take no position on whether a paper review by the judge, including briefing

25

by the petitioner, would be an adequate opportunity to be heard, for more was provided in this case.

We believe the type of hearing afforded to Silva gave him a meaningful opportunity to be heard appropriate to the circumstances. Before the hearing, Silva's attorney filed "defendant's 1170.95 subdivision (e) memorandum." At the hearing, his attorney argued his legal interpretation of the requirements of subdivision (e), his objections to the prosecution's proposed 24-year sentence, and the mitigating and aggravating factors under the Rules of Court. He made his own proposal for a sentence of 11 years. He did not argue, though he could have, that the evidence was insufficient on count 8. Given the procedural setting, this was a timely and meaningful opportunity to respond to the prosecution's updated resentencing memorandum, which served as a postconviction equivalent of a charging instrument. There was no denial of Silva's right to be heard.

4. **The record of conviction supports the court's determination that Silva was guilty of five of the six originally charged robbery and attempt offenses**

a. *Burden of proof and standard of proof*

Silva challenges the sufficiency of the evidence on some of the robbery and attempt charges, specifically counts 4, 7, and 8. As a threshold matter, his sufficiency of the evidence attack raises burden of proof and related standard of proof issues.

The burden of proof was on the prosecution to prove any redesignated crimes because designation of a new crime in lieu of a murder conviction is analogous to a criminal conviction. (See *People v. Aranda* (2012) 55 Cal.4th 342, 356 ["Under the due process clauses of the Fifth and Fourteenth Amendments, the prosecution must prove a defendant's guilt of a criminal offense beyond a reasonable doubt"]; cf. § 1170.95, subd. (d)(3); *Fortman,*

*supra*, 64 Cal.App.5th at p. 223 [subd. (d)(3) hearing], review granted.) But we need not decide the applicable standard of proof. *Howard* held the resentencing court in that case did not err in considering "uncontroverted" evidence in the record and "redesignating Howard's conviction as first degree burglary, because the evidence at trial demonstrated *beyond any dispute* the building was a residence." (*Howard, supra*, 50 Cal.App.5th at p. 738, italics added.) Because the parties have not addressed the burden of proof issue, we follow the approach taken in *Howard* and hold that on any standard— preponderance of the evidence, clear and convincing proof, or proof beyond a reasonable doubt—the prosecution met its burden since the proof here was in fact "beyond any dispute." (*Ibid.*)

  b. *The record of conviction*

  The courts construing section 1170.95 have also held that, unlike subdivision (d)(3), which allows parties to introduce " 'new evidence' " (*People v. Myles, supra*, 69 Cal.App.5th at pp. 698–703), the prosecution's proof of the underlying felony or target offense under subdivision (e) must be found exclusively in the record of conviction. (*In re I.A.* (2020) 48 Cal.App.5th 767, 774–776; *Gonzales, supra*, 65 Cal.App.5th at p. 1174.) The record of conviction in Silva's case included full trial transcripts, preliminary hearing transcripts, and the appellate opinions in the case, all of which may be used in the resentencing process. (*Lewis, supra*, 11 Cal.5th at p. 972 [appellate opinion is part of the record of conviction under subd. (c), but "the probative value of an appellate opinion is case-specific"]; *People v. Harris* (2021) 60 Cal.App.5th 939, 959, fn. 13, review granted Apr. 28, 2021, S267802 [appellate opinion admissible and probative in subd. (d)(3) hearing]; *People v. Clements* (2021) 60 Cal.App.5th 597, 603, review granted Apr. 28, 2021, S267624) [appellate opinion admissible in subd. (d)(3) hearing]; *People v. Williams* (2020) 57 Cal.App.5th 652, 661–663 [same]; see *People v. Woodell*

(1998) 17 Cal.4th 448, 455–457 [appellate opinion part of the record of conviction and admissible, subject to hearsay exclusions]; *People v. Reed* (1996) 13 Cal.4th 217, 223–226 [preliminary hearing transcript part of the record of conviction and admissible].)  Silva's attorney also stipulated to the judge's use of the statement of the facts of the crime from the presentence probation report attached to the district attorney's updated resentencing memorandum.

In Silva's case, the trial transcripts unquestionably contain evidence supporting "beyond any dispute" (*Howard*, *supra*, 50 Cal.App.5th at p. 738) Judge Jacobson's finding that the felony underlying both murder convictions was a middle-of-the-night home-invasion robbery involving four other participants and multiple victims, including Forde.  The robberies all occurred as part of one continuous transaction during which both killings transpired, so the robberies were collectively the underlying felonies for both murders of which Silva stood convicted.  Because Tabron and Taco had not arrived at a place of temporary safety before Garcia arrived at the Gonzalez house and was killed, the robberies were ongoing and were properly redesignated as the felonies underlying both murders.  (See *People v. Wilkins* (2013) 56 Cal.4th 333, 344–345, 348, fn. 4; *People v. Cavitt* (2004) 33 Cal.4th 187, 203–204, 206–209.)

The same basic facts were proved at the preliminary examination, over which Judge Jacobson presided for nine days.  Accordingly, Judge Jacobson, while not the trial judge, was familiar with the evidence underlying the convictions and was in a good position to make the necessary factual findings.  Based upon the evidence available to him, the judge was required to determine, and we think had ample support in the record to determine, that

Silva was "concerned in the commission of" the underlying robbery and attempt offenses. (Pen. Code, § 31; Evid. Code, § 664.)

c. *There was substantial evidence from which the court could have found Silva guilty of counts 4 and 7, but not count 8*

Preliminarily, for purposes of resentencing, defense counsel consented on Silva's behalf to the court's reliance on the description of the underlying crimes in the probation report, which was attached to the district attorney's updated resentencing memorandum. Silva's challenges to the sufficiency of the evidence implicitly assume the judge was *limited* to reviewing the facts as stated in the probation report. The judge was not so restricted merely because defense counsel stipulated to the court's use of that document. Contrary to Silva's argument, the resentencing court could also rely on the entire record of conviction, which provided substantial evidence under *Jackson v. Virginia* (1979) 443 U.S. 307, 318–319 to support its redesignation on those counts, except count 8. The judge did not specify, nor was he required to specify, precisely which items of evidence he relied on in making his redesignation findings. He said he arrived at his resentencing decision "based on all the evidence in this case."

The parties agree that no sentence should have been imposed on count 8. Jose Hernandez, the named victim in count 8, was a neighbor who called 911 when he heard the gunshots. There was no evidence he was a robbery victim. We shall strike the redesignated offense and the sentence on count 8.

Substantial evidence supported the redesignated convictions for the robbery of Mendoza (count 4) and the attempted robbery of Junior (count 7). (*Jackson v. Virginia, supra,* 443 U.S. at pp. 318–319.) The evidence at trial showed that Taco pointed a gun at Mendoza and Junior, who were playing dice in the basement, and ordered them upstairs. Mendoza testified the

29

perpetrators committed a home-invasion robbery. The robbers took his Mongoose mountain bike. After Tabron corralled all the victims, including Mendoza and Junior, in the back bedroom, he asked everyone for their money and phones. Mendoza, like the others, turned over his wallet. These facts, without more, constitute substantial evidence for the redesignation of Forde's or Garcia's murders as, among other things, a conviction for robbing Mendoza. (*People v. Zamudio* (2008) 43 Cal.4th 327, 356–357.)

Junior, too, was moved upstairs at gunpoint. Tabron specifically demanded Junior's money and cell phone. And while there was no testimony about what Junior might have turned over, the charge and verdict were for attempted robbery. The evidence easily supported that charge as one of the underlying felonies. (*People v. Zamudio*, *supra*, 43 Cal.4th at pp. 356–357.)

> d. *The court did not fail to redesignate underlying felonies for Garcia's murder*

The court did not err in redesignating the murders of Forde and Garcia as a series of home-invasion robberies in concert. The Attorney General suggests the judge considered all six robbery offenses as substitutes for the Forde murder conviction (count 2) and did not redesignate the murder of Garcia (count 1) at all because he was "not a robbery victim." He argues the felony underlying the killing of Garcia was also a home-invasion robbery in concert and should have been so redesignated and resentenced. The sentencing colloquy is not without ambiguity, but as we understand the record, the judge redesignated the two murders as five home-invasion robbery offenses and one attempt without specifying which offenses substituted for which murder. We will therefore not address the Attorney General's argument that Garcia's murder should have been redesignated and resentenced as a home-invasion robbery in concert; we believe it was.

30

**F.** *Sentencing Silva for More Than Two Underlying Robberies*

We turn now to the heart of Silva's appeal, namely that the court illegally resentenced him to prison on more counts of robbery than the number of murder convictions he had sustained, given that he had never been convicted by the jury of any robbery counts. We have already addressed his claim to a constitutional right to a jury determination. (See pt. II.D., *ante*.) As a matter of statutory construction, we reject Silva's claim that a redesignation cannot be made of past alleged crimes that remain unadjudicated. In cases in which the underlying felony or target offense was never charged, the resentencing judge necessarily must identify the appropriate redesignated offense and make factual findings on the petitioner's guilt. (§ 1170.95, subd. (e).) If a judge may redesignate a murder as a crime that was never charged, as is implicit in subdivision (e), we see no reason why he or she cannot redesignate a murder as a charge once made but dropped in circumstances where the dismissal was not for lack of evidence, but in reliance on the felony-murder rule then in effect.

The Legislature's provision that the statute of limitations "shall not be a bar" to the redesignation decision (§ 1170.95, subd. (e)) implicitly empowers the court to reach back to long-past conduct, including counts in the original charging documents, for purposes of redesignation. That the prosecutor dropped the robbery charges from the amended information does not at this stage in the proceedings protect Silva from adjudication of the allegations as the underlying felonies of the two murders. In cases such as Silva's, in which additional counts of the underlying felony have once been charged but no verdict has been rendered, the judge must make factual findings of guilt just as if the underlying felony had never been charged.

### 1. *People v. Watson* (2021) 64 Cal.App.5th 474

The decision in *People v. Watson* (2021) 64 Cal.App.5th 474 (*Watson*) significantly undercuts Silva's argument by allowing the court to redesignate more than one underlying felony in lieu of a murder conviction. There, the defendant was sentenced to 15 years to life in prison after pleading guilty to one count of second degree murder in 1988. The victim had admitted the defendant into his hotel room, unaware that he and two accomplices had a preexisting "specific intent to grab him and steal his money from him." (*Watson*, at p. 486.) Watson grabbed the victim from behind so his two accomplices could enter the room. In the ensuing struggle, the victim fought back, and one of Watson's accomplices suddenly started wildly stabbing the victim, who died. (*Id*. at p. 479.)

Watson, still in prison in 2019, petitioned for resentencing, and his murder conviction was vacated. (*Watson*, *supra*, 64 Cal.App.5th at p. 477.) The resentencing court concluded Watson had committed both first degree burglary and first degree residential robbery as felonies underlying his second degree murder conviction. (*Id*. at p. 480.) It sentenced Watson on both underlying felonies, staying execution of the robbery sentence under section 654 and, with 32 years' credit for time served (§ 1170.95, subd. (g)), ordered him immediately released from prison.[9] (*Watson*, at pp. 477, 481.)

In affirming that resentencing decision, Division Three of this court held the Legislature's use of the definite article in "the . . . underlying felony" in subdivision (e) and its use of the singular noun did not mean a single felony must be redesignated in lieu of each murder conviction that has been

---

[9] The *Watson* case started out as a People's appeal, and Watson filed a cross-appeal. (*Watson*, *supra*, 64 Cal.App.5th at p. 481.) When the People later abandoned their appeal, the court decided just the remaining cross-appeal by Watson. (*Ibid*.)

vacated under section 1170.95.  (§ 1170.95, subd. (e); *Watson*, *supra*, 64 Cal.App.5th at p. 485.)  The phrase " 'underlying felony' is susceptible of either singular or plural meaning depending on context.  Viewed in this way, the Legislature's use of the singular form was not necessarily intended to restrict courts to designating only one underlying felony under section 1170.95, subdivision (e)." (*Watson*, *supra*, at p. 485; see Pen. Code, § 7; Evid. Code, § 10.)

### 2. Silva could legally be resentenced for five home-invasion robberies in concert and one attempted robbery in lieu of two murder convictions

Applying *Watson*'s reasoning to the issue before us, there appears to be no statutory impediment to the imposition of sentence on more counts on resentencing under subdivision (e) than the number of murder convictions originally sustained.  But even under *Watson*'s holding, we find a distinction worth noting.

In *Watson*, the resentencing court found the defendant guilty of two redesignated felonies, but the sentence on one count was stayed, and in any event, both felonies were committed against the same victim who was murdered.  (*Watson*, *supra*, 64 Cal.App.5th at pp. 478, 481.)  Here, we are asked whether the resentencing court could properly find Silva guilty of six counts of robbery or attempted robbery, all except one victimizing individuals other than the murder victims, and could sentence him consecutively on those counts in lieu of only two counts of murder of Forde and Garcia.

Silva contends this was a violation of due process, the right to jury trial, confrontation, and the right to counsel.[10]  (U.S. Const., 5th, 6th & 14th

---

[10] As we have already explained, the Sixth Amendment did not apply to Silva's resentencing.  (See pt. II.D., *ante*.)  Moreover, Silva was represented by appointed counsel throughout the section 1170.95 proceedings beginning

Amends.) The Attorney General contends the resentencing judge had discretion under subdivision (e) to redesignate more offenses than one in lieu of each of Silva's murder convictions in order to more closely approximate the gravity of his conduct. In our view, the Attorney General's position more faithfully reflects the legislative intent. We conclude the federal and state Constitutions pose no bar to the redesignation of additional counts, so long as the petitioner receives notice, an opportunity to be heard, and the prosecution bears its burden of proving guilt on the redesignated counts.

Subdivision (e) of section 1170.95 appears to invest the superior court with considerable discretion in redesignating the petitioner's murder convictions as underlying felonies and resentencing a petitioner to an appropriate term of years based on his or her individual culpability. We believe the court may consider the full extent of the petitioner's criminal conduct, and the redesignation may reflect, among other things, the number of crime victims, not just the number of murder charges on which the petitioner was convicted. (See *Howard*, *supra*, 50 Cal.App.5th at p. 742 ["the purpose of section 1170.95 is to punish a defendant commensurate with his individual culpability"].) The focus is on achieving a just sentence—not making sure the redesignated offenses line up numerically with the vacated murder convictions. (See § 1170.95, subd. (e) [court redesignates murder conviction "for resentencing purposes"].) "When a court resentences a defendant pursuant to section 1170.95, the only limitation is the new sentence cannot be greater than the original sentence. (§ 1170.95, subd. (d)(1).)" (*Howard*, at p. 742.)

---

just days after he filed his petition. (§ 1170.95, subd. (c).) (See *Lewis*, *supra*, 11 Cal.5th at p. 957].)

Except for the redesignation of count 8, the judge did not violate section 1170.95 or the federal or state Constitutions in resentencing Silva, nor did he abuse his discretion in selecting a term of 16 years. We shall strike count 8 for lack of supporting evidence, but because count 8 was sentenced concurrently, striking it does not alter the length of Silva's aggregate sentence.

### 3. There is no need to remand for resentencing

Both parties request a remand for resentencing. Although a remand could possibly lead to clarification of the court's reasoning in some respects, it is highly unlikely to result in a shorter sentence, as we did not find any error by the court that contributed to the length of the sentence. Moreover, the record demonstrates that Judge Jacobson would not impose a longer sentence, even if it were available. He believed he had the option of imposing a longer sentence by sentencing count 8 consecutively, but he deliberately rejected that alternative and sentenced count 8 concurrently. "I'm finding that 16 years appears to me, based on all the evidence in this case, to be appropriate based on Mr. Silva's history, his behavior in this case, and the damage and harm that was done in this case." For this reason, even if a longer sentence could be calculated on remand, we think it clear the court would not impose a longer sentence. Remanding the case for resentencing would be an idle act and a waste of judicial resources.

## III. DISPOSITION

The redesignated offense and sentence on count 8 are ordered stricken for lack of evidence. The judgment is otherwise affirmed. The superior court shall prepare an amended abstract of judgment omitting count 8 and shall forward it to the Department of Corrections and Rehabilitation.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
ROSS, J.*

---

* Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

STREETER, J., Concurring.

Although we conclude that the burden of proof question is unnecessary to our disposition, the question of what burden must be met when a resentencing court selects one or more uncharged "target offense[s]" or "underlying felon[ies]" under Penal Code section 1170.95, subdivision (e)—preponderance of the evidence, clear and convincing proof, or proof beyond a reasonable doubt—is not only closely related to the issues of notice and opportunity to be heard that we decide here, but is a pressing matter in its own right. I would have preferred to see us go further and decide it along with these other issues of fundamental fairness. To me, we must bear in mind the applicable burden of proof when we evaluate the sufficiency of the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1000–1007.)

" '[T]he degree of proof required in a particular type of proceeding "is the kind of question which has traditionally been left to the judiciary to resolve." [Citation.] [Fn. omitted.] "In cases involving individual rights, whether criminal or civil, '[t]he standard of proof [at a minimum] reflects the value society places on individual liberty.' " [Citations.]' 'The standard of proof must satisfy " 'the constitutional minimum of "fundamental fairness." ' " ' [Citations.] 'The function of a standard of proof is to instruct the fact finder concerning the degree of confidence our society deems necessary in the correctness of factual conclusions for a particular type of adjudication, to allocate the risk of error between the litigants, and to indicate the relative importance attached to the ultimate decision.' [Citation.])" (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1344–1345 (conc. opn. of Raye, P. J.).)

Had we reached the issue, I would have concluded that the prosecution bears the burden of proving any redesignated offense under Penal Code

1

section 1170.95, subdivision (e), beyond a reasonable doubt. (Cf. *People v. Frierson* (2017) 4 Cal.5th 225 [prosecution bears burden of proving Prop. 36 petitioner's ineligibility for resentencing under Three Strikes Reform Act of 2012 beyond a reasonable doubt].) I think that is not only constitutionally compelled as a matter of due process (*In re Winship* (1970) 397 U.S. 358, 362), but also as a matter of statutory interpretation. When the entirety of the statutory scheme is read as a whole, I see no reason why the Legislature would have intended to place a beyond a reasonable doubt burden on the prosecution at a section 1170.95, subdivision (d)(3) hearing, but some lesser burden at a section 1170.95, subdivision (e) hearing where the parties choose to proceed solely on the record of conviction. Accordingly, whether viewed as a matter of statutory interpretation as in *Frierson*, or as a matter of due process as in *Winship*, I think the burden of proof here is beyond a reasonable doubt.

STREETER, J.

Trial Court:    Alameda County Superior Court

Trial Judge:    Hon. Morris Jacobson

Counsel:        Law Offices of Joseph C. Shipp and Joseph C. Shipp, by
                appointment of the Court of Appeal under the First District
                Appellate Project, for Defendant and Appellant.

                Xavier Becerra and Rob Bonta, Attorneys General,
                Lance E. Winters, Chief Assistant Attorney General,
                Jeffrey M. Laurence, Senior Assistant Attorney General,
                René A. Chacón and David M. Baskind, Deputy Attorneys
                General, for Plaintiff and Respondent.